*NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| ROBERT STERLING DORSEY, | : | CIV. NO. 22-936 (RMB-MJS) |
| Plaintiff, | : | **OPINION** |
| v. | : |  |
| ELIZABETH MOHAN, et al., | : |  |
| Defendants | : |  |

This matter comes before the Court upon Plaintiff Robert Sterling Dorsey's ("Plaintiff") *pro se* amended complaint (Docket No. 10), Defendants' motion to dismiss filed by United States of America, Elizabeth Moham, David Ortiz, and Jeffery Wilk[1] ("Defendants") [partial] motion to dismiss the amended complaint (Mot. to Dismiss, Dkt. No. 29), Plaintiff's brief in opposition to the motion to dismiss (Pl's Opp. Brief, Docket No. 36), and Defendants' reply brief (Defs' Reply Brief, Docket No. 37.) The Court will decide the motion on the briefs[2] without an oral hearing, pursuant to Federal Rule of Civil Procedure 78(b). For the reasons discussed below, the Court will grant Defendants' [partial] motion to dismiss.

---

[1] Elizabeth Moham (identified in the amended complaint as Elizabeth Mohan) and Jeffrey Wilk (identified in the amended complaint as David Wilk) provided the correct spellings of their names, which the Court will use in this Opinion, except where Plaintiff is quoted.

[2] The Court grants Defendants' request (Dkt. No. 30) to accept their brief in support of their motion to dismiss, four pages in excess of the page limit.

1

I.  **PROCEDURAL HISTORY**

Plaintiff, who was incarcerated at the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix") on November 18, 2020, submitted an administrative tort claim, received by the Bureau of Prison's ("BOP") Northeast Regional Office on February 16, 2021. In his tort claim, Plaintiff alleged that on November 18, 2020, FCI Fort Dix Pharmacist Elizabeth Moham ("Moham") violated the Eighth Amendment by dispensing his prescribed pain medication, acetaminophen, to another inmate, who then passed it to another inmate before it reached Plaintiff. Plaintiff returned the medication to staff because it had been handled by other inmates and not properly distributed. The medication was not replaced, causing Plaintiff to go without pain medication for 30 days. (Declaration of Corrie Dobovich ("Dobovich Decl.") ¶¶ 9, 10, Dkt. No. 29-3, and Ex. 5, Dkt. No. 29-4 at 62-63; Ex. 6, Dkt. No. 29-4 at 64-70.)[3] BOP's Northeast Regional Office denied Plaintiff's administrative tort claim in October 2021, finding that his medical records did not substantiate his claims. (*Id.* ¶ 11 and Ex. 7, Dkt. No. 29-4 at 72-75.)

Consequently, Plaintiff filed this lawsuit in February 2022, after he was released from FCI Fort Dix. (Compl., Dkt. No. 1.) This Court granted Plaintiff's application to proceed *in forma pauperis* and gave Plaintiff leave to submit an

---

[3] The Court may consider documents relevant to subject matter jurisdiction over Plaintiff's FTCA claim(s). *See*, *e.g.*, *Wills v. USP Canaan*, 635 F. App'x 5, 8 (3d Cir. 2015) (noting the district court "was free to weigh the evidence presented and satisfy itself that the exercise of its jurisdiction was proper" where the Government's motion to dismiss constituted a factual attack on the existence of subject matter jurisdiction.)

amended complaint. (Orders, Dkt. Nos. 4, 5.) Plaintiff filed his amended complaint on November 10, 2022. (Am. Compl., Dkt. No. 10.) Defendants move to dismiss all claims, with the exception Plaintiff's FTCA claim based on the alleged distribution of Plaintiff's pain medication to another inmate.

## II.   THE AMENDED COMPLAINT

Plaintiff was formerly a federal inmate confined at FCI Fort Dix. (Compl., Dkt. No. 1.) In his amended complaint, Plaintiff alleges that on November 18, 2020, at FCI Fort Dix, Pharmacy Technician Elizabeth Moham gave another inmate Plaintiff's prescribed pain medication, which left him without pain medication for 30 days. (Am. Compl., Dkt. No. 10.) Plaintiff further alleges that Health Services Supervisor Jeffrey Wilk ("Wilk") did not respond to Plaintiff's informal administrative remedy request concerning this incident, and that Warden David Ortiz failed to conduct a full investigation into Plaintiff's claim. Plaintiff alleges Eighth Amendment claims against Moham, Wilk and Ortiz under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*,[4] and tort claims against the Government under the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1).[5]

---

[4] 403 U.S. 388 (1971).

[5] 28 U.S.C. § 1346(b)(1) provides, in relevant part:

> the district courts … shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages … for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the

3

## III. DISCUSSION

### A. Rule 12(b)(1) Standard of Law

Defendants seek dismissal of the complaint for lack of subject matter jurisdiction based on a factual attack to jurisdiction. "[A] factual 12(b)(1) challenge attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). "[T]he court 'is free to weigh the evidence[, including evidence outside the pleadings,] and satisfy itself as to the existence of its power to hear the case," and "no presumptive truthfulness attaches to [the] plaintiff's allegations....'" *Id.* (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) (first alteration added)). The burden is on the plaintiff to establish the court's jurisdiction. *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009).

### B. Public Health Service Immunity

Defendants seek to dismiss the *Bivens* claim against Elizabeth Moham ("Lt. Cmdr. Moham") based on her immunity as a commissioned member of the United States Public Health Service ("PHS"). (Defs' Mot. to Dismiss, Dkt. No. 29-6 at 15-17.) Plaintiff opposes Defendants' motion to dismiss, asserting that Lt. Comdr. Moham is not entitled to qualified immunity because she violated federal law by

---

United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

dispensing his medication to another inmate. (Pl's Opp. Brief, Dkt. No. 36 at 1-2.) In their reply brief, Defendants note Plaintiff did not address their PHS immunity defense. (Defs' Reply Brief, Dkt. No. 37 at 2.)

The Public Health Service Act, "Section 233(a) grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct." *Hui v. Castaneda*, 559 U.S. 799, 806 (2010); 42 U.S.C. § 233(a). In support of their Rule 12(b)(1) motion to dismiss, Defendants submitted: (1) the Declaration of Elizabeth Moham, stating that she is a commissioned Public Health Service officer, rank lieutenant commander; and (2) Lt. Cmdr. Moham's Personnel Order from PHS, appointing her senior pharmacist at FCI Fort Dix on July 10, 2010. ("Moham Decl." ¶¶ 1-2, Dkt. No. 29-5 at 2.) Lt. Cmdr. Moham states that from July 19, 2010 through January 13, 2023, she was stationed at FCI Fort Dix, where she held the title of pharmacist. (*Id.*, ¶ 3.) She continuously served as a PHS officer. (*Id.*, ¶ 4.)

In *Hui*, the Supreme Court held that 42 U.S.C. § 233(a) "grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct." 559 U.S. at 806; *see, e.g.*, *Gilmore v. McGann*, No. 23-1467, 2023 WL 6141606, at *1 (3d Cir. Sept. 20, 2023); *see e.g. Landis v. Wilson*, No. 21-2985, 2022 WL 2128563, at *1 (3d Cir. June 14, 2022). Lt. Cmdr.

5

Moham is absolutely immune from Plaintiff's *Bivens* claim. Therefore, the Court will dismiss this claim for lack of jurisdiction.

## C. *Bivens* Claims Against Defendants Wilk and Ortiz

Defendants seek to dismiss Plaintiff's *Bivens* claims against Warden Ortiz and Wilk for three alternative reasons: (1) special factors counsel hesitation against extending *Bivens* liability to the claims in this case; (2) Plaintiff failed to exhaust administrative remedies under the Prison Litigation Reform Act; and (3) Defendants are entitled to qualified immunity. (Defs' Mot. to Dismiss, Dkt. No. 29-6 at 9-10.) Plaintiff did not respond to Defendants' argument that this Court should not extend *Bivens* liability to Plaintiff's claims against Wilk and Warden Ortiz. (Pl's Opp. Brief, Dkt. No. 36; Defs' Reply Brief, Dkt. No. 37.) Plaintiff did, however, elucidate the basis for his claims against Wilk and Warden Ortiz. He asserts Wilk is Lt. Cmdr. Moham's direct supervisor, and he failed to respond to Plaintiff's grievance alleging she gave his medication to another inmate. (Pl's Opp Brief, Dkt. No. 36 at 2.) He further alleges that as a supervisor Wilk "is responsible for insubordination of staff members that he supervises." (*Id.* at 3.) Further, Plaintiff asserts Warden Ortiz violated his right to due process by not following protocols for an investigation through the Internal Affairs Office of the Inspector General. (*Id.*) In their reply brief, Defendants correctly note Plaintiff did not address why the Court should imply a damages remedy in this new *Bivens* context. (Defs' Reply Brief, Dkt. No. 37 at 2.)

6

Defendants argue that Plaintiff's *Bivens* claims regarding the inadequate response to his grievances by Wilk and Warden Ortiz arise in a new *Bivens* context, and special factors counsel hesitation in implying a damages remedy. (Defs' Opp Brief, Dkt. No. 29-6 at 17-25.) The *Bivens* context is new because it is different from the three cases where the Supreme Court has implied a damages remedy against a federal employee for an alleged constitutional violation. (*Id.* at 17-20.) Special factors, including alternative avenues of relief, separation of powers principles, and systemwide costs and burden on the Government from recognizing a new damages claim disfavor recognition of a damages remedy. (*Id.* at 20-25.) The Court begins by addressing whether Plaintiff's claims arise in a new *Bivens* context.

The fact that the Supreme Court recognized a *Bivens* remedy only three times in more than forty years establishes that the expansion of the *Bivens* remedy by the judiciary is disfavored. *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017). The three cases recognized by the Supreme Court are (1) *Bivens*, 403 U.S. 388 (1971), a Fourth Amendment unreasonable search and seizure claim based on the warrantless search of the plaintiff's home by federal narcotics agents, and his arrest without probable cause; (2) *Davis v. Passman*, 442 U.S. 228 (1979), a Fifth Amendment equal protection claim against a Congressman for gender discrimination in the workplace; and (3) *Carlson v. Green*, 446 U.S. 14 (1980), an Eighth Amendment claim against federal prison officials for failing to provide emergency medical care to treat an inmate's life-threatening asthma. *Id.* at 130-31. The Supreme Court recently

instructed courts to hesitate before recognizing a *Bivens* damages remedy because "creating a cause of action is a legislative endeavor," "the Judiciary's authority" to create a *Bivens* remedy is "at best, uncertain," and if it "were called to decide *Bivens* today, [it] would decline to discover any implied causes of action in the Constitution." *Egbert v. Boule*, 596 U.S. 482, 491, 502 (2022) (citation omitted).

The Supreme Court, however, retained the two-step framework for implying a *Bivens* damages remedy. First, courts must ask whether the case presents "a new *Bivens* context" and, if so, whether there are "'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* at 492 (emphasis added). The Court advised that "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts[.]" *Id.* at 486. "Unless the Supreme Court has recognized the context before, the context is 'new' and a special factors inquiry is required to determine if *Bivens* expansion is appropriate." *Mack v. Yost*, 968 F.3d 311, 319 (3d Cir. 2020).

Under the second step of the analytical framework, "a *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Abbasi*, 582 U.S. at 136 (quoting *Carlson*, 446 U.S. at 18 (quoting *Bivens*, 403 U.S. at 396)). Under this step, courts must consider "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."

8

*Id.* The two analytical steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert,* 596 U.S. at 482 (emphasis added). Ultimately, "[i]f there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy." *Id.*

Plaintiff's claims arise in a new *Bivens* context, having little in common with the three prior cases where the Supreme Court implied a damages remedy. The most analogous case, *Carlson*, involved an Eighth Amendment claim of inadequate medical treatment by federal prison officials, resulting in the death of an inmate from an asthma attack. *Carlson*, 446 U.S. at 16-17. The claims asserted here are far less serious, the adequacy of the supervisory response to a complaint that medical staff improperly dispensed a prisoner's pain medication, acetaminophen. As a result of the failure to respond to his grievances and conduct a full investigation, Plaintiff alleges he needlessly suffered pain for 30 days. Plaintiff's claims against Defendants Wilk and Warden Ortiz arise in a new *Bivens* context. Therefore, this Court turns to the second step of the analysis, whether special factors counsel hesitation in implying a damages remedy.

Defendants argue that this Court should decline to imply a damages remedy because Plaintiff had several alternate avenues of relief to address his claims. (Defs' Mot. to Dismiss, Dkt. No. 29-6 at 21-22, *citing e.g. Smith v. Ebbert*, No. 21-915, 2021 WL 2660872, at *4 (M.D. Pa. June 29, 2021). Defendants submitted the Declaration of Corrie Dobovich, who provided records that were maintained in the ordinary

9

course of business by BOP at FCI Fort Dix, showing that Plaintiff exhausted administrative remedies for his claim against Lt. Cmdr. Moham. ("Dobovich Decl. ¶ 7, Dkt. No. 29-3; Ex. 3, Dkt. No. 29-4 at 14-50; Ex. 4, Dkt. No. 29-4 at 51-61.)

When a federal prisoner has access to the BOP's administrative remedy program to obtain equitable relief for a constitutional violation, this may be sufficient reason not to imply a damages remedy. *Mack v. Yost*, 968 F.3d at 320-21 (quoting *Abbasi*, 582 U.S. at 137). The record establishes Plaintiff had access to the BOP administrative remedy program, and he exhausted his claim that his pain medication was not dispensed directly to him on November 18, 2020. Petitioner also used the administrative remedy program to report that Wilk did not respond to his informal administrative remedy request on form BP-8. (*Id.*, Ex. 4, Dkt. No. 29-4 at 58, 60.)

Pursuant to 28 C.F.R. § 542.10, a federal prisoner in BOP custody may "seek formal review of an issue relating to any aspect of his/her own confinement." It is not for federal courts to "question whether a given remedy is adequate" rather it "is a legislative determination that must be left to Congress[.]" *Egbert*, 596 U.S. at 498. The record shows Plaintiff availed himself of the BOP administrative remedy program. An "alternative remedy need not provide an individual with complete relief in order to foreclose a damages remedy under *Bivens*." *Mack*, 968 F.3d at 320 (citation omitted).

Defendants also submit that the systemwide costs and burden the Government from creation of a damages remedy counsel hesitation in this new *Bivens* context. (Defs' Mot. to Dismiss, Dkt. No. 29-6 at 24-25.) In *Abbasi*, the Supreme Court

instructed courts to consider "the burden on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself[.]" 582 U.S. at 136. Relevant to this analysis, prisoners may file grievances under the BOP's administrative remedy program for any issue related to prison life. As a result, many grievances require responses from staff. The fear of personal liability for failing to respond or inadequately responding to grievances may interfere with the daunting task of operating a prison. Similarly, the costs to the Government, if the Government chose to indemnify its employees, could significantly affect the prison's budget. For these reasons, this Court will decline to imply a damages remedy in this new context.

### D.  FTCA Claims for Failure Respond to Inmate Remedy Request and Failure to Fully Investigate Inmate Claims

Defendants argue Plaintiff's FTCA claims based on Wilk's and Warden Ortiz's negligence[6] in responding to his grievances are barred by the FTCA discretionary function exception. (Defs' Brief, Dkt. No. 29-6 at 32.) Therefore, the Court should dismiss the FTCA claims for lack of jurisdiction. (*Id.*)

Plaintiff did not directly respond to Defendants' argument concerning the discretionary function exception, but he opposed Defendants' motion to dismiss,

---

[6] Plaintiff has characterized the inadequate responses to his grievances by Wilk and Warden Ortiz as negligence and deliberate indifference to his serious medical needs, in violation of the Eighth Amendment. There is no constitutional right to an administrative remedy program in prison. *Heleva v. Kramer*, 214 F. App'x 244, 247 (3d Cir. 2007) (citing, *e.g.*, *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir.2001) (collecting cases)). Therefore, the Court will address Plaintiff's allegations of negligence.

11

explaining that "the main defendant, Mohan, broke federal law when she dispensed the plaintiffs [sic] 'medically prescribed' medication to other inmates for distribution." (Pl's Opp. Brief, Dkt. No. 37 at 1.) Plaintiff further stated, "the BOP failed to investigate the allegations and left this inmate in pain." (*Id.*) Plaintiff described Wilk's alleged misconduct:

> This BOP official is the direct supervisor of Defendant Mohan this individual deprived the plaintiff [of] a fair and prompt investigation this defendant failed to respond to any emails, from staff, inmates or anything showing to disregard towards the inmates [sic] serious medical needs. As a supervisor Wilks is responsible for the insubordination of staff members that he supervises.

(*Id.* at 2-3.)

Plaintiff also described Ortiz's alleged misconduct, "David Ortiz (warden) fails to follow protocol once a staff member is accused of wrongdoings Internal Affairs Office of the Inspector General failing to do so prevents the plaintiff his right to 'due process.'" (*Id.* at 3.) Defendants, in their reply brief, note that Plaintiff did not identify any mandatory statute, regulation, or rule violated by Defendants in failing to respond to Plaintiff's BP-8 informal remedy request or mandatory rules governing investigation of inmate allegations.

### 1.  FTCA Discretionary Function Exception

Congress, in enacting the FTCA, did not waive sovereign immunity for all personal injury suits against the United States. One of the exceptions to the waiver of sovereign immunity provides:

> The provisions of this chapter and section 1346(b) of this title shall not apply to—
>
> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). To invoke this discretionary function exception, the Government must show: "(1) its agent's action 'involve[d] an element of judgment or choice' and (2) its agent's judgment was 'of the kind that the ... exception was designed to shield,' meaning that it was 'susceptible to policy analysis.'" *Clark v. Sec'y of United States Navy*, 102 F.4th 658, 661 (3d Cir. 2024) (quoting *United States v. Gaubert*, 499 U.S. 315, 322–23, 325 (1991) (brackets and internal quotation marks omitted in *Clark*)).

### 2. Analysis of FTCA Claim Concerning Wilk

Defendants argue that the first prong of the discretionary function exception test is met because there are no mandatory statutes or rules governing the manner in which the BOP responds to informal remedy requests. The Court agrees. A federal prisoner in BOP custody in usually required to initiate the administrative remedy process by attempting informal resolution. The governing regulation, 28 C.F.R. § 542.13(a), provides "an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." According to BOP Program Statement

1330.18, Administrative Remedy Program[7] "[e]ach Warden shall establish procedures to allow for the informal resolution of inmate complaints."  Further, it is the warden's responsibility to ensure " that effective informal resolution procedures are in place and that good faith attempts at informal resolution are made in an orderly and timely manner by both inmates and staff."  Additionally, "[t]he deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP–9), is 20 calendar days following the date on which the basis for the Request occurred."  28 C.F.R. § 542.14(a).  Extensions of this deadline are available for "valid reasons" including "an unusually long period taken for informal resolution attempts."  *Id.* § 541.14(b).

     Defendants submitted a copy of the BP-8 form at issue in Plaintiff's amended complaint.  (Dobovich Decl., Dkt. No. 29-4 at 61.)  The form instructs inmates, "[y]ou are advised that prior to receiving and filing a request for Administrative Remedy Form BP-9, you must ordinarily attempt to informally resolve your complaint through your Correctional Counselor."  Plaintiff's BP-8 form indicates it was issued on November 19, 2020, and signed by Plaintiff's Correctional Counselor.  The BP-8 form was returned to the Correctional Counselor with the explanation: "attempted to internally resolve with no response.  Consider request denied."  The BP-8 is signed by a Unit Manager, indicating a BP-9 form was issued to Plaintiff on December 21, 2020.  In his "Request for Administrative Remedy" [BP-9 form],

---

[7] Available at https://www.bop.gov/resources/policy_and_forms.jsp.

Plaintiff reported to the warden that "Health Service Administration has failed to resolve this administrative remedy in a timely manner, as inmate Robert Dorsey filed a BP-8 against E. Mohan. … This occurred on the 18th day of November and inmate Dorsey has not received a response until this day, December 21, 2020." (Dobovich Decl., Ex. 4, Dkt. No. 29-4 at 60.)

The first inquiry for application of the discretionary function exception is whether the agent's action involved an element of judgment or choice. Prison staff are not required to resolve a prisoner's BP-8 request within a specific timeframe, as evidenced by the regulation permitting an extension of time to file a BP-9 formal remedy request when it has taken "an unusually long period" for informal resolution attempts. Wilk had discretion in when he would respond to Plaintiff's request to informally resolve the matter of Lt. Cmdr. Moham's distribution of his medication. Wilk's conduct involved an element of judgment, therefore, the Court turns to the second inquiry, whether the agent's judgment or choice is susceptible to policy analysis.

Plaintiff alleges Wilk is the "Health Service Supervisor" at FCI Fort Dix, responsible for supervising and training his subordinates. (Am. Compl., Dkt. No. 10 ¶¶ 4(c), 6.) The Court takes judicial notice that November 18, 2020, the day of the alleged incident, was during the height of the COVID-19 pandemic, which placed

unprecedented demand on prison health services.[8]  A supervisor of a prison medical department must make economic policy decisions on the most effective manner to meet the medical needs of prisoners with limited staff and financial resources.  When and how a supervisor responds to a complaint about medical staff falls within this policy analysis. Therefore, Plaintiff's FTCA claim based on Wilk's alleged failure to respond to his informal remedy request between November 19, 2020 and December 21, 2020, is barred by the discretionary function exception.

### 3. Analysis of FTCA Claim Concerning Warden Ortiz

Defendants contend the discretionary function exception is also applicable to Plaintiff's claim that Warden Ortiz failed to conduct a full investigation of Plaintiff's grievance.  Defendants submit that BOP's Correctional Services Manual outlines general practices for correctional staff, including investigation of major incidents, but it does not mandate specific investigatory steps. (Defs' Mot. to Dismiss, Dkt. No. 29-6 at 38, citing BOP Prog. St. 5500.14).[9]  In response, Plaintiff suggests Warden Ortiz should have investigated his complaint using the protocols of the Internal Affairs Office of the Inspector General.  (Pl's Opp. Brief, Dkt. No. 36 at 3.)

---

[8] "The court may judicially notice a fact that is not subject to reasonable dispute because it: … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).

[9] Available at https://www.bop.gov/policy/progstat/5500_014_CN-1.pdf, at 1, 2, Ch. 1:6, Ch. 6:1-6.

The record shows Plaintiff submitted an inmate remedy request on form BP-9 to Warden Ortiz on December 22, 2020, alleging Lt. Cmdr. Moham dispensed his medication to another inmate. (Dobovich Decl., Ex. 4, Dkt. No. 29-4 at 60.) BOP Program Statement 1330.18(5)(a)(3),[10] provides, in pertinent part, that the warden "shall" conduct an investigation into each administrative remedy request. Section 13(b) of P.S. 1330.18 provides:

> The Clerk or Coordinator shall assign each filed Request or Appeal for investigation and response preparation. Matters in which specific staff involvement is alleged may not be investigated by either staff alleged to be involved or by staff under their supervision. Allegations of physical abuse by staff shall be referred to the Office of Internal Affairs (OIA) in accordance with procedures established for such referrals. Where appropriate; e.g., when OIA or another agency is assuming primary responsibility for investigating the allegations, the response to the Request or Appeal may be an interim response and need not be delayed pending the outcome of the other investigation.
>
> Requests or Appeals shall be investigated thoroughly, and all relevant information developed in the investigation shall ordinarily be supported by written documents or notes of the investigator's findings. Notes should be sufficiently detailed to show the name, title, and location of the information provided, the date the information was provided, and a full description of the information provided. Such documents and notes shall be retained with the case file copy. When deemed necessary in the investigator's discretion, the investigator may request a written statement from another staff member regarding matters raised in the Request or Appeal. Requested staff shall provide such statements promptly. For a disciplinary Appeal, a complete copy of the appealed disciplinary actions record shall be maintained with the Appeal file copy.

---

[10] *See supra* n. 7.

Only allegations of physical abuse of staff must be referred to the Office of Internal Affairs for investigation. The BOP program statement does not otherwise require specific steps to be taken in investigating an inmate's remedy request. Thus, the manner in which the warden conducts an investigation involves an element of judgment or choice. The Court turns to the second inquiry of the discretionary function analysis, whether the agent's judgment or choice is susceptible to policy analysis.

Federal prison management involves social and economic policy choices concerning the purpose of incarceration, the health and welfare of the inmates and staff, and the staffing and economic resources required to operate a prison. "Prison administrators should be afforded wide-ranging deference in implementing and executing their policies because their discretion is needed to preserve internal discipline and maintain institutional security." *Donaldson v. United States*, 281 F. App'x 75, 77 (3d Cir. 2008) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979)). "'[T]he discretionary function exception protects agency decisions concerning the scope and manner in which it conducts an investigation so long as the agency does not violate a mandatory directive.'" *Alfrey v. United States*, 276 F.3d 557, 565 (9th Cir. 2002) (quoting *Vickers v. United States*, 228 F.3d 944, 951 (9th Cir. 2000)). Therefore, the discretionary function exception bars Plaintiff's FTCA claim regarding Warden Ortiz's failure to conduct a full investigation of Plaintiff's grievance against Lt. Cmdr. Moham.

## IV. CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss for lack of jurisdiction Plaintiff's *Bivens* claims and Plaintiff's FTCA claims involving the conduct of AHSA Wilk and Warden Ortiz will be granted.

An appropriate Order follows.

**DATE: <u>July 11, 2024</u>**

<u>s/Renée Marie Bumb</u>
RENÉE MARIE BUMB
Chief United States District Judge
